## In re Anonymous No. 76 D.B. 83

Disciplinary Board Docket no. 76 D.B. 83.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHILLER, *Member,* December 6, 1990—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

### HISTORY OF PROCEEDINGS

On November 2, 1983, petitioner was convicted in the United States District Court for the [ ] District of Pennsylvania of contempt of court in violation of 18 U.S.C. §401(3). Petitioner's conviction was affirmed by the United States Court of Appeals for the [ ] Circuit on August 21, 1984.

On December 19, 1983, the Supreme Court of Pennsylvania referred the matter to the Disciplinary Board pursuant to Rule 214, Pa.R.D.E. On February 5, 1987, the Disciplinary Board filed its report in which the majority recommended a private reprimand. On March 6, 1987, the Supreme Court granted Office of Disciplinary Counsel's petition for review. On May 29, 1987, pursuant to Rule 208(e)(3), Pa.R.D.E., the Supreme Court issued a rule to show cause why petitioner should not be disbarred. Thereafter, by order dated September 3, 1987, the Supreme Court suspended petitioner from the practice of law for a period of three years. The term of this suspension expired October 3, 1990.

Petitioner filed his petition for reinstatement with the Disciplinary Board on April 5, 1990, approximately six months prior to the expiration of his three-year suspension. On April 18, 1990, the matter

was referred to Hearing Committee [ ], consisting of [ ]. A reinstatement hearing was held on June 12, 1990 at which petitioner was represented by [A], Esq. By its report filed September 26, 1990, the hearing committee recommended petitioner be reinstated to the practice of law in the Commonwealth of Pennsylvania. Office of Disciplinary Counsel did not file exceptions to the report of the hearing committee.

## FINDINGS OF FACT

Petitioner, [ ], age 49, is married and has two daughters, ages 16 and 19. (N.T. 83.) He currently resides with his family at [ ]. Petitioner was admitted to the practice of law before the Supreme Court of Pennsylvania on November 20, 1967. He was also admitted to the United States District Court for the [ ] District of Pennsylvania on November 27, 1968; the United States Court of Appeals for the [ ] Circuit on May 11, 1971; and the United States Court of Appeals for the [ ] Circuit on September 16, 1982. (Reinstatement questionnaire at 2.)

Petitioner obtained his undergraduate degree in 1962 from [B] University and in 1965, earned his law degree from [B] University School of Law. (Reinstatement questionnaire at 1.) Following his graduation from law school, petitioner entered the United States Army and was assigned to active duty in Vietnam. In Vietnam, petitioner served as a company commander and was awarded decorations for his competence, devotion to duty, and valor. On June 3, 1967, petitioner received an honorable discharge from the United States Army. (Reinstatement questionnaire at 3; exhs. 6, 7 and 9.)

After petitioner returned from active duty in Vietnam, he became associated with the law firm of [C] and later the firm of [D]. In April 1968, petitioner

accepted a position as a staff attorney with the [E]. Thereafter, petitioner was appointed [F] of the [E] and served in that position until his resignation in July 1982. From July 1982 until the effective date of his suspension in October 1987, petitioner was self-employed as a sole practitioner. (Reinstatement questionnaire at 3.)

Prior to his suspension, petitioner performed pro bono work for various organizations involving the underprivileged and the poor. Petitioner worked closely with a self-help group comprised of inmates serving life sentences at [   ] Prison. His work with the prisoners included providing moral support and free legal advice. (Exh. 4, 5; N.T. 85-86.) Petitioner also engaged in other legal activities. Petitioner lectured at [B] University School of Law from 1975 through 1982, worked on the first Speedy Trial Act, participated in bar-related activities, and was a member of the [   ] Circuit Conference and a trustee of the [G] Division of the District Court. (Reinstatement questionnaire at 2.)

While serving as [F] of the [E], the following events occurred which led to petitioner's suspension from the practice of law in the Commonwealth of Pennsylvania. On June 18, 1981, by magistrate's order, the [E] was appointed to represent [H] in the matter of *United States v. [H]*, Criminal no. [   ]. Petitioner, in addition to being [F], personally assisted in [H's] legal representation. In September 1981, petitioner accepted from [H] a patio, built at petitioner's residence by [H], valued at approximately $2,500. In February 1982, petitioner accepted an unsolicited cash gift of $1,500, which was delivered to petitioner by an intermediary. (N.T. 78.) Petitioner was cited by the Public Integrity System of the Criminal Division of the Justice Department for receiving these payments, in violation of the Plan for Representation of Indigent

Criminal Defendants as defined and authorized by the Criminal Justice Act. On November 2, 1983, the Honorable [I], Chief Judge of the United States District Court for the District of [ ], held that petitioner's conduct was in violation of 18 U.S.C. §401(3) and fined petitioner $500.

After his suspension from the practice of law, petitioner supported his family by selling life insurance for the [J] in [ ]. (N.T. 71.) On February 11, 1988, petitioner was issued a life insurance and annuity license by the Pennsylvania Insurance Department. (Reinstatement questionnaire at 13.)

## DISCUSSION

In order for petitioner to gain reinstatement to the practice of law before the bar of the Supreme Court of Pennsylvania, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this Commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. See Rule 218(C)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

In determining whether petitioner has demonstrated his present fitness to practice law, the board has considered, as did the hearing committee, the nature and magnitude of petitioner's misconduct for which he was suspended, petitioner's present competence and legal abilities, his character, his accomplishments both prior to and subsequent to his suspension, his rehabilitative efforts, and whether petitioner has shown remorse and regret for his misconduct. *Philadelphia News Inc. v. Disciplinary*

*Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976); *In re Anonymous No. 53 D.B. 75,* 39 D.&C. 3d 374 (1986).

## A. Moral Qualifications

Petitioner is fully aware of the impropriety of accepting unsolicited gratuities. He candidly admitted that he had made a "horrible mistake in judgment" (N.T. 66) and has taken full responsibility for the consequences. At no time did petitioner offer an excuse for his past misconduct. Petitioner has shown sincere remorse for his past transgressions and the shame he caused his family and friends. Petitioner testified that "it is something I will regret forever." (N.T. 66.)

Other than the misconduct which led to his suspension, petitioner has an unblemished record and has not been the subject of any other disciplinary complaints. Petitioner has no unsatisfied judgments, federal tax liens, or outstanding claims by the Client Security Fund. Petitioner properly provided notice of his suspension and provided correct and truthful answers on his reinstatement questionnaire. At no time since his suspension has petitioner practiced law or held himself out to be an attorney. (N.T. 81-83.)

Petitioner has an excellent reputation in the community and is well-respected amongst his colleagues. Ten witnesses, including nine attorneys, testified to petitioner's present moral qualifications and excellent reputation in the community. (N.T. 12-63.)

The Disciplinary Board has found that petitioner possesses the requisite moral qualifications to be reinstated to the practice of law in the Commonwealth of Pennsylvania.

## B. Competency and Learning in the Law

During his suspension, petitioner has completed eight Pennsylvania Bar Institute-Continuing Legal Education courses as required by Disciplinary Board Rule §89.279. (Reinstatement questionnaire at 15.) Petitioner also attended a seminar on civil rights held by the [B] University Alumni Association on January 8, 1990.

Petitioner has kept abreast of emerging legal issues and has familiarized himself with recent statutory and case law. (N.T. 72-75.) Petitioner subscribes to and reads on a regular basis the Atlantic Reporter advance sheets and [B] Law Quarterlies. Petitioner also purchased five new law books in regard to civil and criminal law. (Reinstatement questionnaire at 15; N.T. 72-75.)

In light of these facts, petitioner has proven by clear and convincing evidence that he has the competency and learning in the law required for reinstatement to the practice of law.

## C. Resumption to the Practice of Law

There is no doubt that petitioner's past misconduct that led to his suspension was improper and detrimental to the integrity of the legal system. However, it is apparent that petitioner's prior misconduct was a diversion from an otherwise laudatory record. Petitioner has shown sincere remorse and regret for his misconduct. The board believes that petitioner's past experience will deter him from future violations, as indicated by petitioner's own testimony:

"[B]esides the personal consequences it has had on my family, myself and my health, I feel very bad that the bar had to put up with this and was tainted . . . Because of that alone, I can assure you that nothing like this will ever happen again." (N.T. 67.)

During the reinstatement hearing, the following 10 witnesses testified on petitioner's behalf: [K], Esq. (N.T. 12-16); [L], Esq. (N.T. 17-22); [M], Esq. (N.T. 23-26); [N], Esq. (N.T. 27-29); [O], Esq. (N.T. 30-33); [P], Esq. (N.T. 35-40); [Q], Esq. (N.T. 40-47); [R], Esq. (N.T. 47-53); [S], Esq. (N.T. 53-58); and [T], Esq. (N.T. 58-63). The witnesses testified to petitioner's ability and integrity. All of the character witnesses also testified that they respect petitioner, despite his suspension. Finally, the witnesses testified that petitioner has demonstrated remorse and regret for his misconduct and that petitioner's reinstatement would not be detrimental to the integrity and standing of the bar or subversive to the public interest.

In addition to the 10 witnesses who testified on petitioner's behalf at the reinstatement hearing, petitioner also offered into evidence (without objection from Disciplinary Counsel), letters of recommendation from [U], Esq. (exh. 1); [V], Esq. (exh. 2); and [W], Esq. (exh. 3). Messrs. [U], [V] and [W] opined that petitioner is fit to practice law and if petitioner were reinstated, he would make a positive contribution to the bar and the reputation of the bar would not suffer. (Exhs. 1-3.)

The board finds that petitioner's resumption to the practice of law would not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive of the public interest.

## CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania finds and concludes that petitioner has demonstrated by clear and convincing evidence that he has both the moral qualifications and the competency and learning in the law required for admission

to practice in this Commonwealth. In addition, he has demonstrated that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends to the Supreme Court of Pennsylvania that the instant petition for reinstatement of [petitioner] to the practice of law in the Commonwealth of Pennsylvania be granted by your honorable court.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Messrs. Tumolo and Gilardi did not participate in the adjudication.

## ORDER

And now, April 1, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated December 6, 1990, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.